

# NUMBER 13-24-00155-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF K.G., A CHILD

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 5 OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña
Memorandum Opinion by Justice Peña**

Appellant M.M. (Mother) appeals a judgment terminating her parental rights to her child K.G.[1] In two issues, Mother argues that there is legally and factually insufficient

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, parents and children are referred to by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d).

evidence supporting (1) the statutory termination grounds, and (2) that termination was in the child's best interest. We affirm.

## I.   BACKGROUND

### A.   Pretrial Proceedings

Appellee, the Department of Family and Protective Services (the Department), filed a petition seeking to terminate Mother's parental rights to K.G., who was four years old at the time of trial. The petition was accompanied by an affidavit in support of removal alleging neglectful supervision and physical abuse by Mother. According to the affidavit, Mother brought K.G. to the emergency room on two occasions alleging that K.G. had worms in his eyes and parts of his face. She claimed to have been extracting worms from K.G.'s nose with tweezers. Hospital personnel observed crusted blood below K.G.'s nose. However, no worms were detected. Mother had observable needle marks on her arms, but she denied drug use. Mother told Department investigators that she was diagnosed with multiple mental health disorders but that she did not take her prescribed medications.[2]

The trial court awarded the Department temporary managing conservatorship of K.G., and the case proceeded to a bench trial.

### B.   Trial Record

Lisa Miluszusky, a Department caseworker, testified that the Department removed K.G. from Mother because of substance abuse and mental health issues. Miluszusky explained that Mother was living at a hotel and was hallucinating at the time of removal. According to Miluszusky, Mother had not visited K.G. for over five months before trial.

---

[2] The trial court admitted a guardian ad litem report at trial restating the facts underlying the removal of K.G. from Mother.

Prior to that time, she visited K.G. twice despite being offered weekly visits. Miluszusky stated that K.G. would act out after the visits with Mother.

The trial court ordered that Mother complete the following services: (1) actively seek employment and provide the Department with employment applications; (2) demonstrate that she can provide K.G. suitable housing and a stable living environment, including by applying for housing with the local housing authority; (3) provide the Department with any new contact information within forty-eight hours and allow the Department access to her residence; (4) participate and complete parenting classes with Gulf Coast Rehabilitation; (5) submit to random drug tests at the Department's request; (6) complete a drug and alcohol assessment; (7) participate in and complete individual counseling; and (8) attend and successfully complete a psychological evaluation.

According to Miluszusky, Mother did not fully complete any court-ordered services. Mother was required to attend sixteen hours of individual counseling and thirty-six hours of group counseling in accordance with her substance abuse assessment. However, she only completed eight and four hours, respectively. At the time of trial, Mother did not have a residence and was staying with friends and relatives. Miluszusky stated that Mother's last known residence was a motel. Mother remained unemployed at the time of trial and had not been employed since K.G.'s removal. Mother failed to maintain consistent contact with the Department. Miluszusky stated that she attempted to contact Mother at least three times a month, including visiting her last known address, contacting homeless shelters, and texting her at her last known phone number.

3

Mother testified that she was addicted to methamphetamine and that she used the drug as recently as two days ago. Mother refused to submit to drug tests throughout the pendency of the case. Mother attended an inpatient drug rehabilitation program, but she did not complete it. Sylvia Cruz, a Department caseworker, testified that she arrived at Mother's residence early one morning to transport her to another treatment program. Cruz waited for over an hour for Mother to come to her vehicle, but she did not show up.

Mother testified that she was diagnosed with post-traumatic stress disorder, panic disorder, major depressive disorder, and anxiety disorder. Mother stated that she is not currently receiving treatment for her conditions.

Miluszusky testified that K.G. was currently in a foster home and that his foster parents intended to adopt him. K.G. is diagnosed with unspecified disruptive disorder, attention deficit and hyperactivity disorder, and adjustment disorder, which are treated with multiple medications. K.G. also receives speech therapy. Following K.G.'s removal, he exhibited anger issues, including throwing furniture at day care. Miluszusky stated that K.G.'s behavior and speech have improved since being in the Department's care. She explained that he is a very happy and calm child and that he is bonded with his foster family. Miluszusky maintained that K.G.'s foster parents were meeting all his needs and that it would be in his best interests for Mother's parental rights to be terminated.

Jessica Fitch, K.G.'s court appointed special advocate, testified that K.G. is relaxed and happy in foster placement. She stated that K.G. has a strong bond with his foster family and that his foster parents would like to adopt K.G. Fitch explained that K.G.'s behavior has improved since his placement in foster care and that his foster parents are

able to redirect him when he misbehaves. According to Fitch, K.G. said that he enjoys living with his foster family and that he does not ask about Mother.

Mother testified that she disagrees with K.G.'s currently prescribed medication. She admitted that she does not have the means to currently care for K.G. but that she hopes to get housing soon.

## C.     Trial Court's Ruling

The trial court signed an order terminating Mother's parental rights pursuant to Texas Family Code § 161.001(b)(1)(D), (E), (N), (O), and (P). *See id.* § 161.001(b)(1)(D), (E), (N), (O), & (P). The trial court further found that termination of Mother's parental rights was in K.G.'s best interests. *See id.* § 161.001(b)(2). This appeal followed.

## II.     SUFFICIENCY OF THE EVIDENCE

## A.     Standard of Review & Applicable Law

Because of the fundamental rights at issue, due process requires that parental termination be supported by clear and convincing evidence*. In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In parental termination cases, our legal and factual sufficiency standards honor this elevated burden of proof while respecting the factfinder's role. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) (citing *In re J.F.C.*, 96 S.W.3d at 264). "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a

finding may be considered." *Id*. In a legal sufficiency review, we "cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id*. at 630–31 (citing *In re J.F.C.*, 96 S.W.3d at 266). Thus, "[e]vidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Factual sufficiency, on the other hand, requires us to weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* We "must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)). Therefore, "[e]vidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. (citing *In re J.F.C.*, 96 S.W.3d at 266). Before parental rights may be involuntarily terminated, the trier of fact must find two elements by clear and convincing evidence: (1) that the parent committed one of the statutory grounds for termination found in § 161.001(b)(1) of the family code; and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).

## B. Statutory Grounds

In her first issue, Mother argues there is legally and factually insufficient evidence supporting each termination ground. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best

interest finding—even if the trial court based the termination on more than one ground."
*In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019) (per curiam). The Texas Supreme Court has held that, regardless of whether other grounds for termination are unchallenged on appeal, an appellate court must always review issues alleging the evidence was insufficient to support findings of endangerment under parts (D) or (E) of § 161.001(b)(1) of the family code. *In re N.G.*, 577 S.W.3d at 234, 237 (holding that "due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights" on endangerment grounds because an endangerment finding "becomes a basis to terminate that parent's rights to other children" under § 161.001(b)(1)(M)). Therefore, we will first address the sufficiency of the evidence supporting the trial court's (D) & (E) findings.

### 1. (D) & (E) Grounds

Subsection 161.001(b)(1)(D) allows termination when the evidence proves by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the child's physical or emotional well-being, and subsection 161.001(b)(1)(E) allows termination if the parent has engaged in conduct, or knowingly placed the child with persons who engage in conduct, which endangers the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). "Subsection (D) addresses *the child's surroundings and environment rather than parental misconduct*, which is the subject of subsection (E)." *In re A.L.H.*, 624 S.W.3d 47, 56 (Tex. App.—El Paso 2021, no pet.) (quoting *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.)). Subsection (D) permits termination based on only a single act or omission. *In re V.A.,* 598 S.W.3d 317, 329 (Tex.

App.—Houston [14th Dist.] 2020, pet. denied). In contrast, subsection (E) requires evidence of a "voluntary, deliberate, and conscious course of conduct by the parent" and generally more than a single act or omission. *In re D.L.W.W.*, 617 S.W.3d 64, 78 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)).

"For both of these provisions, 'endanger' means 'to expose to loss or injury; to jeopardize.'" *Id.* (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id*. "It is enough if the youth is exposed to loss or injury or his physical or emotional well-being is jeopardized." *Id.* (quoting *In re P.E.W.*, 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.)). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well[-]being of a child." *In re S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied) (first citing *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); and then citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

### 2.     Analysis

The Department initially removed K.G. due to concerns regarding Mother's mental health and drug use. The evidence at trial reflects that Mother had several untreated mental disorders and was using methamphetamine during the pendency of the case. Mother was unable to complete court-ordered services intended to address these concerns and failed to submit to drug testing. A parent's use of narcotics and its effect on

8

her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024). "When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, and prolonged absence from the children, a factfinder reasonably can find endangerment to the child's physical or emotional well-being under (D) and (E)." *Id.* at 281. Those attendant risks are present in this case as Mother had not seen K.G. for over five months, did not have housing, and remained unemployed. *See id.*

Further, Mother's "[u]ntreated mental illness can expose a child to endangerment . . . , and is a factor the court may consider." *In re S.R.*, 452 S.W.3d 351, 363 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (considering parent's mental health and noncompliance with medication schedule as factors in endangering child); *see also In re L.L.F.*, No. 02-11-00485-CV, 2012 WL 2923291, *15 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.) (considering parent's failure to take medication to treat mental health issues as factor in creating environment that endangers child's emotional or physical well-being). Finally, Mother's failure to improve her ability to care for K.G. by completing court-ordered services is further evidence of endangerment. *See In re S.R.*, 452 S.W.3d at 362; *see also In re S.D.H.B.*, No. 14-23-00343-CV, 2023 WL 7201251, at *7 (Tex. App.—Houston [14th Dist.] Nov. 2, 2023, pet. denied) (mem. op.) (explaining that a failure to complete a court-ordered service plan may constitute evidence supporting an

endangerment finding because such conduct subjects a child to instability and uncertainty, which endangers the child).

Viewing all the evidence in the light most favorable to the trial court's (D) and (E) findings and considering undisputed contrary evidence, we conclude that a reasonable factfinder could form a firm belief or conviction that the findings were true. *See In re A.C.*, 560 S.W.3d at 634. Further, considering the entire record, including evidence both supporting and contradicting the trial court's findings, we conclude that the contrary evidence is not so overwhelming as to undermine the court's findings. *See id.* Because the evidence is legally and factually sufficient to support both endangerment grounds, we need not address the sufficiency of the evidence supporting the remaining grounds. *See In re N.G.*, 577 S.W.3d at 232–33. We overrule Mother's first issue.

## C. Best Interest

In Mother's second issue, she argues there is legally and factually insufficient evidence supporting the trial court's best interest finding.

### 1. *Holley* Factors

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131; *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We consider the following factors in determining whether termination of parental rights is in a child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed

placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking termination is not required to prove all nine *Holley* factors, and in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 25, 27 (Tex. 2002).

### 2. Analysis

As to the first *Holley* factor, there was no evidence of K.G.'s desires, only that he enjoyed his current placement. However, when a child such as K.G. is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for, and has spent minimal time with a parent. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). This factor supports the trial court's finding.

As to the second *Holley* factor, there was evidence that K.G. had mental health issues that were being treated with medication and guidance from his foster parents. K.G. was also receiving speech therapy. However, Mother disagreed that K.G. should be medicated and there is no indication she is able to address his needs due to her unstable lifestyle. This factor supports the trial court's finding as well.

Relevant to the third *Holley* factor, regarding emotional and physical danger, is Mother's admitted methamphetamine use and untreated mental illness. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting that a parent's drug use supports a finding that termination is in the best interest of the child). Further, as analyzed above, the evidence supports the trial court's endangerment findings. *See In re*

11

*V.A.*, 598 S.W.3d 317, 333 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). ("Evidence supporting termination under the grounds listed in section 161.001(b)(1) can be considered in support of a finding that termination is in the child's best interest."). This factor supports the trial court's finding.

Moving to the fifth, sixth, and seventh *Holley* factors, the evidence showed that the K.G.'s current caregivers were meeting his basic needs and wished to adopt him, while Mother showed continued instability through her lack of housing and employment and continued methamphetamine use. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [the] family service plan support a finding that termination is in the best interest of the child."). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *In re G.A.C.*, 499 S.W.3d 138, 141 (Tex. App.—Amarillo 2016, pet. denied); *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). These factors support the trial court's best interest finding.

Regarding, the eighth and ninth *Holley* factors, Mother offered no credible excuse for her failures to treat her addiction and mental health or provide K.G. with a stable home. *See In re O.E.R.*, 573 S.W.3d at 911. These factors support a best interest finding as well.

Considering all the *Holley* factors, we conclude that the evidence was legally and factually sufficient to rebut the strong presumption that keeping K.G. with his biological mother is in his best interest. *See* TEX. FAM. CODE ANN. § 153.131. We overrule Mother's second issue.

12

### III.    CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
22nd day of August, 2024.